UNITED STATES v. MEINEL & WEMPLE, Inc., et al,

(District Court, S. D. New York. February 24, 1919.)

WAR ⚖══15—TRADING WITH ENEMY ACT—OFFENSES.

Correspondence by the American agent of a German insurance company with a foreign agent, relative to the business, between October 6 and October 30, 1917, *held* not to constitute an offense under Trading with the Enemy Act Oct. 6, 1917 (Comp. St. 1918, §§ 3115½a–3115½j), in view of the provision of section 4 (a) of the act (section 3115½bb), suspending its operation in that regard for 30 days.

Criminal prosecution by the United States against Meinel & Wemple, Incorporated, Edward Meinel, and William Y. Wemple. On demurrer to indictment. Demurrer sustained.

Francis C. Caffey, U. S. Atty., of New York City, and Earl B. Barnes and Candler Cobb, Asst. U. S. Attys., both of New York City), for the United States.

Charles A. Towne and Leon O. Bailey, both of New York City, for defendants.

MAYER, District Judge. The question on this demurrer is simple and does not need much exposition. The indictment charges defendants with violating sections 3a and 16 of the Trading with the Enemy Act (Act Oct. 6, 1917, c. 106, 40 Stat. 412, 425 [Comp. St. 1918, §§ 3115½b, 3115½bb]), which became law on October 6, 1917.

The defendant Meinel & Wemple, Incorporated, is a domestic corporation, and the individual defendants, Edward Meinel and William Y. Wemple, are respectively president and secretary-treasurer, and directors, thereof. The corporation was engaged in the insurance business, and the offense charged is that between October 6, 1917, and October 30, 1917, the corporation and the individual defendants attempted to have business communications with one Paul Clausen, a resident

⚖══For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

of Copenhagen, Denmark, and an agent and intermediary of a German, and therefore an enemy, partnership, by the name of H. Mutzenbecher, Jr.

Attached to the indictment as exhibits are copies of 11 communications from defendants to Clausen between October 9, 1917, and October 30, 1917, inclusive. All the communications on their face are of a routine business character, except that of October 30, 1917, which is merely a cablegram containing the words "Impairment unlikely," and that is nothing more than a statement of defendants as to their conclusion in respect of the fire insurance interests which they represented. Among the communications are Sanborn map corrections—a perfectly familiar proceeding in the fire insurance business. It was suggested in argument that these corrections might have conveyed information to the enemy, but, if so, then the charge would have been under another statute, and no such charge is made here, nor does the indictment disclose a sinister purpose.

The sole question in the case is whether the communications alleged in the indictment were lawful within 30 days after the passage of the act; i. e., within 30 days after October 6, 1917.

On April 6, 1917, when war was declared, the President issued a proclamation with regard to the transaction of the business of insurance in the United States by companies domiciled in Germany, whereby such companies were permitted to transact business as theretofore, with the sole exception that they were prohibited from transmitting money from the United States into Germany. On July 13, 1917, the President issued an additional proclamation by the terms of which insurance companies domiciled in Germany and in countries allied with Germany were prohibited from writing marine and war risks, and the inhibition against the transmission of funds from this country was continued in force.

Prior to the passage therefore, of the Trading with the Enemy Act, the business of insurance companies domiciled in Germany could be freely conducted here, provided that the limitations contained in the presidential proclamations were not transgressed.

It is plain that the Congress realized, in view of this business situation, which the President in his judgment deemed proper for the welfare and protection of American interests, that there could not be a successful change overnight, and therefore a grace of 30 days was given, as will appear infra, within which to do such things as were proper and necessary in regard to the legitimate requirements of the business relations arising out of this insurance situation.

The intent of the "Trading with the Enemy Act" was, of course, to shut off trade and financial aid from the enemy, but the problems involved were so many and varied in character that large discretion was conferred upon the President, to the extent, inter alia, of allowing him to license insurance companies to continue business.

To make the legislation effective certain acts were prohibited and offenses defined. In section 3 it was provided:

"(a) For any person in the United States, except with the license of the President, granted to such person, or to the enemy, or ally of enemy, as pro-

vided in this act, to trade, or attempt to trade, either directly or indirectly, with, to, or from, or for, or on account of, or on behalf of, or for the benefit of, any other person, with knowledge or reasonable cause to believe that such other person is an enemy or ally of enemy, or is conducting or taking part in such trade, directly or indirectly, for, or on account of, or on behalf of, or for the benefit of, an enemy or ally of enemy."

In section 16 it was provided:

"Sec. 16. That whoever shall willfully violate any of the provisions of this act or of any license, rule, or regulation issued thereunder, and whoever shall willfully violate, neglect, or refuse to comply with any order of the President issued in compliance with the provisions of this act shall, upon conviction, be fined not more than $10,000, or, if a natural person, imprisoned for not more than ten years, or both; and the officer, director, or agent of any corporation who knowingly participates in such violation shall be punished by a like fine, imprisonment, or both. * * *"

Section 4 (a) of the act provides as follows:

"(a) Every enemy or ally of enemy insurance or reinsurance company, and every enemy or ally of enemy, doing business within the United States through an agency or branch office, or otherwise, may, within thirty days after the passage of this act, apply to the President for a license to continue to do business. * * *

"For a period of thirty days after the passage of this act, and further pending the entry of such order by the President, after application made by any enemy or ally of enemy insurance or reinsurance company, within such thirty days as above provided, the provisions of the President's proclamation of April sixth, nineteen hundred and seventeen, relative to agencies in the United States of certain insurance companies, as modified by the provisions of the President's proclamation of July thirteenth, nineteen hundred and seventeen, relative to marine and war-risk insurance, shall remain in full force and effect so far as it applies to such German insurance companies, and the conditions of said proclamation of April sixth, nineteen hundred and seventeen, as modified by said proclamation of July thirteenth, nineteen hundred and seventeen, shall also during said period of thirty days after the passage of this act, and pending the order of the President as herein provided, apply to any enemy or ally of enemy insurance or reinsurance company, anything in this act to the contrary notwithstanding. * * *

"For a period of thirty days after the passage of this act, and further pending the entry of such order by the President, after application made within such thirty days by any enemy or ally of enemy, other than an insurance or reinsurance company as above provided, it shall be lawful for such enemy or ally of enemy to continue to do business in this country and for any person to trade with, to, from, for, on account of, on behalf of or for the benefit of such enemy or ally of enemy, anything in this act to the contrary notwithstanding. * * *

"If no license is applied for within thirty days after the passage of this act, or if a license shall be refused to any enemy or ally of enemy, whether insurance or reinsurance company, or other person, making application, or if any license granted shall be revoked by the President, the provisions of sections three and sixteen hereof shall forthwith apply to all trade or to any attempt to trade with, to, from, for, by, on account of, or on behalf of, or for the benefit of such company or other person. * * *"    Comp. St. 1918, § 3115½bb.

It is impossible to imagine language which more clearly indicates that any person could trade with a German insurance interest for 30 days after October 6, 1917, before such trade became unlawful under this act.

It is contended in support of the indictment that this 30-day period did not apply to a case where the trading was through an intermediary,

but such contention is both strained and illogical. If Clausen was not an intermediary, and not an enemy, then the trade was not unlawful. The allegation as to the unlawful nature of the trade rests upon the proposition that it is claimed that defendants, in point of fact, communicated and traded with the enemy, because, it is asserted, Clausen was a mere conduit of communication. If the trade was with the enemy, then it was not unlawful, because within the 30 days of grace which the statute allowed. If this conclusion is correct, no crime is charged in the indictment, and the demurrer must be sustained.

As an indictment of this character must have had a serious effect upon the personal and business standing of defendants, it is but just to them to state that nothing in the indictment reflects upon them, either personally or in a business way. Their acts were entirely lawful, and, so far as this charge is concerned, they did what they had full right to do under the law.

Demurrer sustained.